UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JACQUELINE PANNA, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | § § § § § | SA-05-CA-0346 XR (NN) |
| Defendant. | § § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** Hon. Xavier Rodriguez
United States District Judge

## I. Introduction

Plaintiff Jacqueline Panna seeks review and reversal of the administrative denial of her application for Disability Insurance Benefits ("DIB") by the Administrative Law Judge ("ALJ") on May 12, 2004.[1] Plaintiff contends that ALJ Jonathan P. Blucher's conclusion that plaintiff retained the residual functional capacity ("RFC") to "perform light work without excessive exposure to dust, fumes, odors, and chemicals" is not supported by substantial evidence of the record. For this reason, plaintiff requests that the court reverse and award benefits to plaintiff, or, in the alternative, remand the case for further proceedings.[2]

---

[1] Docket Entry 3.  **See also** Administrative Transcript ("Transcript") at 19-26.

[2] Docket Entries 3, 11, 17.

After considering plaintiff's brief in support of her complaint,[3] defendant's brief in support of the Commissioner's decision,[4] plaintiff's reply brief,[5] the transcript of the Social Security Administration ("SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend that plaintiff's request for relief be **DENIED**, plaintiff's complaint be **DISMISSED**, and the decision of the Commissioner be **AFIRMED**.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. Jurisdiction

The Court has jurisdiction under 42 U.S.C. § 405(g).

## III. Administrative Proceedings

According to the record in this case, plaintiff fully exhausted her administrative remedies prior to filing this action in federal court. Plaintiff filed an application for DIB on May 30, 2002, alleging a disability that started on August 15, 2000.[6] The SSA denied plaintiff's application

---

[3] Docket Entry 11.

[4] Docket Entry 14.

[5] Docket Entry 17.

[6] Transcript at 54.

initially on December 27, 2002,[7] and on reconsideration, February 11, 2003.[8]

On February 20, 2003, plaintiff requested a hearing before an ALJ.[9] The hearing was held on March 3, 2004.[10] Plaintiff was represented by counsel at the hearing. Plaintiff's attorney was able to examine and question plaintiff and the vocational expert ("VE"), Judith Harper, during the hearing.[11]

Plaintiff, who was fifty-six years old at the hearing,[12] testified that she was a United States citizen, was born in the United States, and attended school up to the seventh grade. She had no further education but could read and write English.

At the administrative hearing, plaintiff testified that she had been using oxygen for the past four years.[13] She said that she used an oxygen machine to go outside. Although plaintiff did not need to use the machine at home during daytime, she needed to use a different oxygen machine to sleep at night.[14] Plaintiff testified that she would not have to use the oxygen machine three days out of the week.[15] She also testified that she required oxygen when she walked more than three

---

[7] Transcript at 29-33.

[8] Transcript at 35-38.

[9] Transcript at 39.

[10] Transcript at 206-236.

[11] **Id.**

[12] Transcript at 210.

[13] Transcript at 217.

[14] **Id.**

[15] Transcript at 222.

blocks, even on good days, and she could stand for about 30 minutes before having to sit down.[16] She testified that she had severe emphysema but had no weight-lifting restrictions.[17]

Plaintiff told the ALJ that her last job was at a hamburger company, and she quit working there in August 2000 because of her asthma and emphysema.[18] Plaintiff also testified that she had past work experience as a burger packer, a home provider, and a bar attendant.[19]

When asked about her daily and routine activities, plaintiff testified that she washed dishes and cleaned her house. She said on days with good weather, she would walk from her house to the corner and back, and she could walk without the supplemental oxygen.[20]

The ALJ also heard testimony from VE Harper at the hearing. ALJ Blucher described a hypothetical individual fifty-four years old with plaintiff's education and work experience, who needed to be away from "where there's excessive amounts of dusts and dirt, chemical fumes, things of that nature."[21] The vocational expert opined that the hypothetical individual could perform light work as a ticket seller, a furniture rental consultant, and a stock checker in apparel.[22]

On May 12, 2004, the ALJ issued his decision in which he concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through June 30,

---

[16] Transcript at 224.

[17] Transcript at 226.

[18] Transcript at 215. Plaintiff explained that she tried to work for another hamburger or sausage company after this time but was unable to continue.

[19] Transcript at 212 - 213.

[20] Transcript at 224 - 225.

[21] Transcript at 231.

[22] Transcript at 232-233.

2002, the date that her insured status expired.[23]  Specifically, ALJ Blucher found that plaintiff retained the RFC to perform light work such as ticket selling, furniture rental consulting, or stock checking in apparel.[24]

After receiving the ALJ's unfavorable decision dated May 12, 2004, plaintiff requested review of the hearing and decision on September 23, 2004.[25]  On April 7, 2005, the Appeals Council concluded that there was no reason to review the ALJ's decision and denied plaintiff's request for review.[26]  Plaintiff commenced the instant action in this Court on April 25, 2005.[27]

## IV. Issue Presented

Is the ALJ's decision supported by substantial evidence and does it comport with relevant legal standards?

## V. Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying DIB, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[28]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[23] **See** 20 C.F.R. § 404.130 (explaining how disability insured status is determined).

[24] Transcript at 26.

[25] Transcript at 10.

[26] Transcript at 3.

[27] Docket Entry 1.

[28] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[29]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[30]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[31]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[32]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[33]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[34]

**1. Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not reached retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability

---

[29] **Villa v. Sullivan**, 895 F.2d 1019, 1021-1022 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

[30] **Abshire v. Bowen,** 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[31] **Martinez**, 64 F.3d at 173.

[32] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **Villa**, 895 F.2d at 1022 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[33] **Martinez**, 64 F.3d at 174.

[34] **Id.**

insurance benefits.[35] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[36] A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.[37]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[38] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[39]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[40] If so, the claimant will be found not disabled regardless of her medical

---

[35] 42 U.S.C. § 423(a)(1).

[36] 42 U.S.C. § 1382c(a)(3)(A).

[37] 42 U.S.C. § 1382c(a)(3)(B).

[38] 20 C.F.R. §§ 404.1520 and 416.920 (2002).

[39] **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995).

[40] 20 C.F.R. §§ 404.1520 and 416.920.

condition, age, education, or work experience.[41] The second step involves determining whether the claimant's impairment is severe.[42] If it is not severe, the claimant is deemed not disabled.[43] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[44] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[45] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his or her past work.[46] If the claimant is still able to do his or her past work, the claimant is not disabled.[47] If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[48] If the claimant cannot do other work, he or she will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[49] Once the claimant has shown that he or she is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her

---

[41] **Id.**

[42] **Id.**

[43] **Id.**

[44] 20 C.F.R. §§ 404.1520 and 416.920.

[45] **Id.**

[46] **Id.**

[47] **Id.**

[48] **Id.**

[49] **Leggett,** 67 F.3d at 564.

exertional and non-exertional limitations, able to maintain for a significant period of time.[50]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he or she is unable to perform the alternative work.

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process.  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful employment since the alleged onset date of her disability.[51]  ALJ Blucher then concluded at steps two and three that plaintiff had impairments, emphysema and asthma (chronic obstructive pulmonary disease, "COPD"), which are severe, but did not meet or medically equal a listed impairment as of the date plaintiff was last insured.[52]  At step four, the ALJ found that plaintiff was unable to return to her past relevant work.[53]  At step five, the final step, the ALJ found plaintiff has the residual functional capacity to perform a significant range of light work.[54]  Based on the foregoing, ALJ Blucher concluded that plaintiff was not under a disability.[55]

**C. Plaintiff's Allegations of Error**

Plaintiff claims that the ALJ erred in determining that plaintiff was not under a disability, as defined by the Act, and that the determination is not supported by substantial evidence.  In

---

[50] **Watson v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

[51] Transcript at 25.

[52] **Id.**

[53] **Id.**

[54] Transcript at 25-26.

[55] Transcript at 26.

particular, plaintiff contends that the ALJ erred by 1) failing to recontact plaintiff's treating pulmonologist, Dr. Sepulveda, in order to reconcile the evidentiary discrepancies, and 2) mischaracterizing the evidence in the consultative examiner's report.[56]

### 1. Did the ALJ err by failing to recontact plaintiff's treating pulmonologist?

In her first point of error, plaintiff asserts that ALJ Blucher erred by failing to recontact plaintiff's treating pulmonologist, Dr. Sepulveda, as required by 20 C.F.R. §§ 404.1512(e), 404.1527(c)(3), SSR 96-5p, 85-16, and Fifth Circuit case law in order to reconcile the evidentiary discrepancies regarding her use of supplemental oxygen, prior hospitalizations, and steroid treatments.[57]

When the ALJ assesses the oral and written evidence provided by the various medical professionals, he or she must ordinarily give "substantial weight . . . to the opinion, diagnosis and medical evidence of the claimant's treating physician."[58]  However, the ALJ can "'reject the opinion of any physician if the evidence supports a contrary conclusion,'"[59] provided the ALJ has good cause for so doing.[60]

> [W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony.  The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported

---

[56] Docket Entry 11 at 1-2.

[57] Docket Entry 11 at 1.

[58] **Dorsey v. Heckler**, 702 F.2d 597, 603 (5th Cir. 1983).

[59] **Bradley v. Bowen**, 809 F.2d 1054, 1057 (5th Cir. 1987) (quoting **Oldham v. Schweiker**, 660 F.2d 1078, 1084 (5th Cir. 1981)).

[60] **Greenspan v. Shalala**, 38 F.3d 232, 237 (5th Cir. 1994).

by the evidence.[61]

If the evidence the SSA receives from an applicant's treating physician, psychologist, or other medical source is inadequate for the SSA to determine whether the applicant is disabled, the SSA will need additional information to reach a determination or a decision.[62] Likewise, "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)."[63]

In the instant case, the ALJ did not need to recontact Dr. Sepulveda because the record contains additional adequate evidence upon which the ALJ could base his decision. The evidence includes evaluations by physicians that contradict Dr. Sepulveda's assessments.[64] In particular, Dr. Fornos examined plaintiff in September 2002 and reported that plaintiff had a history of bronchial asthma and findings suggestive of COPD, but that she also had the ability to do work activities such as sit, stand, handle objects, hear, and speak.[65] Dr. Fornos concluded that plaintiff was well nourished, and well developed with no acute or chronic distress.[66] In August 2002, Dr. Daehler found plaintiff's lungs to be slightly hyper-expanded and the AP diameter of the chest slightly

---

[61] **Greenspan**, 38 F.3d at 237 (citing **Scott v. Heckler**, 770 F.2d 482, 485 (5th Cir. 1985)).

[62] 20 C.F.R. § 404.1512(e).

[63] **Newton v. Apfel**, 209 F.3d 448, 453 (5th Cir. 2000).

[64] Docket Entry 14 at 7.

[65] Transcript at 71.

[66] Transcript at 70.

increased, suggesting COPD changes, but also found no acute chest disease.[67]

Dr. Fornos' opinion of plaintiff's physical condition, consistent with Dr. Daehler's, contradicts that of Dr. Sepulveda's. The ALJ considered these evaluations along with Dr. Sepulveda's opinion in making his determination of plaintiff's condition. The ALJ also weighed the absence in the record of a prescription for a wheelchair and the minimal evidence in the record to support plaintiff's claim that she had used oxygen for the past four years in determining that her subjective claims of disability were not entirely credible.[68]

ALJ Blucher was well within his authority to give more weight to the evaluations and opinions of Dr. Fornos and Dr.Daehler than that of Dr. Sedpulveda, especially when the record as a whole provided evidence consistent with their evaluations. Accordingly, the record contains substantial evidence upon which the ALJ could make his determination that plaintiff was not disabled on the last date that she was insured. Consequently, there was no need for ALJ Blucher to seek additional information from Dr. Sepulveda, and the ALJ did not err by failing to recontact him.

**2. Did the ALJ mischaracterize the evidence in the consultative examiner's report?**

In her second point of error, plaintiff asserts that the ALJ erred by mischaracterizing the evidence in the consultative examiner's report, which found that plaintiff "might have some limitation to move about or to lift and carry any heavy object."[69] Specifically, plaintiff contends that the ALJ inappropriately speculated that Dr. Fornos based the possible restriction on moving

---

[67] Transcript at 120.

[68] Transcript at 23.

[69] Transcript at 119.

around on plaintiff's subjective complaints, and discounted the restriction in determining that plaintiff had the RFC to perform light work. Plaintiff argues that the definition of light work includes a good deal of walking and moving around, activities that plaintiff could not perform based on Dr. Fornos' evaluation.

The ALJ did not mischaracterize the consultative report from Dr. Fornos.[70] The ALJ noted that Dr. Fornos determined that plaintiff had the ability to do work activities such as sit, stand, handle objects, hear, and speak, based on objective evidence and that she might have some limitations on moving and handling heavy objects.[71] He further noted that Dr. Fornos' report did not include any objective medical evidence to support a limitation on moving around. The ALJ explained that the examiner observed that plaintiff did not appear to be in acute or chronic distress, and she had the ability bend to where her fingertips came within four inches of the floor and to walk on her heels and toes.[72]

Contrary to plaintiff's assertion, ALJ Blucher did not make a medical judgment that is not warranted by clinical findings. He merely observed that the "possible" limitations mentioned by Dr. Fornos appeared to be based on plaintiff's complaints.[73] This observation is supported by the medical evidence in the evaluation. Therefore, ALJ Blucher did not mischaracterize the consultative examiner's report.

Plaintiff also contends that the ALJ's conclusion that plaintiff could perform light work was

---

[70] Docket Entry 14 at 13.

[71] Transcript at 22-23.

[72] **Id.** at 23.

[73] **Id.**

13

not based on substantial evidence.[74]  Plaintiff argues that light work requires a good deal of walking or standing.[75]

When making the assessment of RFC, the adjudicator must base his or her decision on all of the relevant evidence in the case record.[76]  Furthermore, in determining RFC, an ALJ may give less weight to subjective complaints than to objective medical evidence.[77]

In the instant case, ALJ Blucher's finding of plaintiff's RFC is based on substantial evidence. The ALJ found plaintiff has the following RFC:

> lift and carry up to 20 pounds occasionally and 10 pounds frequently;
> walk/stand up to 6 hours and sit up to 8 hours in an 8-hour day; and
> no work around excessive dust, fumes, odors, and chemicals.[78]

At the administrative hearing, plaintiff testified she had no weight lifting limitations from her physicians.[79]  The RFC assessment from the state agency medical consultants in December 2002 found plaintiff to have exertional limitations of lifting 50 pounds occasionally and 25 pounds frequently.[80]  The examining physician further determined that plaintiff could sit for about 6 hours in an 8-hour workday.  At the administrative hearing, plaintiff testified she had no problem

---

[74] Docket Entry 11 at 13.

[75] **Id.**

[76] **Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims**, SSR 96-8p, 1996 WL 374184 at *5 (S.S.A.).

[77] **See Falco v. Shalala**, 27 F.3d 160, 164 (5th Cir. 1994) (The ALJ may find that the medical evidence is more persuasive than the claimant's own testimony.).

[78] Transcript at 25.

[79] Transcript at 226.

[80] Transcript at 90.

sitting.[81]

The ALJ's finding of plaintiff's weight lifting limitations is consistent with the RFC assessment, and is consistent with plaintiff's own testimony. Likewise, the ALJ accepted the evaluating physician's assessment of plaintiff's ability to sit while working in determining her RFC.

Although plaintiff testified she could only stand for about 30 minutes before having to sit down,[82] the evaluating physician determined that plaintiff could stand and/or walk for about 6 hours in an 8-hour workday.[83] As explained above, an ALJ may give less weight to subjective complaints than to objective medical evidence.[84] It was well within the ALJ's authority to give more weight to the RFC assessment from the state agency in reaching his conclusion on plaintiff's limitation on standing or walking than to plaintiff's testimony.

In making the RFC determination, ALJ Blucher noted that plaintiff did not have the ability to perform a full range of light work. Instead she was impeded by exertional and non-exertional limitations. Most significant was the limitation that plaintiff not be in a work environment that exposed her to dust, dirt, chemical fumes, or other things of that nature.[85] The ALJ determined that as of the time that she was last insured, plaintiff could perform a "significant range of light

---

[81] Transcript at 224.

[82] Transcript at 224.

[83] Transcript at 90.

[84] **Falco**, 27 F.3d at 164.

[85] Transcript at 231.

work,"[86] and with the aid of the vocational expert, he determined that there was a significant number of jobs in the local and national economy that she could perform. Accordingly, the ALJ conducted a proper analysis of plaintiff's RFC, and his decision is supported by substantial evidence.

## VI.  Recommendation

Based on the foregoing, I recommend that plaintiff's request for relief be **DENIED**, her complaint (Docket Entry 3) **DISMISSED**, and the decision of the Commissioner **AFFIRMED**.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[87]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the

---

[86] Transcript at 24.

[87] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

party from a *de novo* determination by the District Court.[88]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[89]

   **SIGNED** on July 12, 2006.


                                           _____
                                           NANCY STEIN NOWAK
                                           UNITED STATES MAGISTRATE JUDGE

---

[88] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[89] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).